## Office of Disciplinary Counsel v. Hollinger

Disciplinary Board Docket no. 19 D.B. 2004.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

GEPHART, *Member,* March 21, 2005—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its find-

ings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On February 6, 2004, Office of Disciplinary Counsel filed a petition for discipline against respondent, Michael K. Hollinger. The petition charged respondent with violations of Rules of Professional Conduct 1.5(a) and 8.4(c) arising out of allegations that respondent engaged in a pattern of improper billing of clients. Respondent filed an answer to petition for discipline on April 5, 2004.

A disciplinary hearing was held on June 30, 2004, before Hearing Committee 3.02 comprised of Chair Karen M. Balaban, Esquire, and Members Samuel Leach Andes, Esquire, and Thomas C. Clark, Esquire. Respondent was represented by Richard F. Maffett Jr., Esquire.

Following the submission of briefs by the parties, the committee filed a report on November 22, 2004, finding that respondent engaged in violations of the Rules of Professional Conduct as charged in the petition for discipline and recommending that respondent be suspended for one year and one day retroactive to July 20, 2004.

Respondent filed a brief on exceptions on December 10, 2004. Petitioner filed a brief opposing exceptions on December 28, 2004.

This matter was adjudicated by the Disciplinary Board at the meeting on January 19, 2005.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is located at 200 North Third Street, Suite 1400, Harrisburg, Pennsylvania 17101, is invested, pursuant to the Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania, and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent, Michael K. Hollinger, was born in 1971 and was admitted to the practice of law in the Commonwealth in 1996. His address is 1810 Southwest 31st Street, Allentown, PA 18103. He is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court.

(3) Respondent has no prior history of discipline. He is currently on inactive status, having filed a notice of voluntary assumption of inactive status on July 20, 2004.

(4) From June 1998 to December 2001, respondent was an associate attorney with the law firm of Farrell and Ricci P.C., 4423 North Front Street, Harrisburg, PA 17110. His legal work was concentrated in defending workers' compensation matters on behalf of insurance companies and self-insured companies.

(5) From January 2001 to December 2001, respondent engaged in a pattern of conduct which included billing clients for work he had not actually performed and sending clients correspondence including false reports of services performed, claims that he had attended matters which he had not attended, and significant exaggera-

tions of the amount of services performed or time expended in matters he did actually perform.

(6) Respondent's law firm identified the following 24 specific incidents of over billing.

*Travelers Property Casualty Matters*

(7) Respondent represented the employer in the matter of *Lesley Dawson v. Coca-Cola:*

(a) On March 15, 2001, respondent submitted a bill for 1.8 hours amounting to $171 for a review and summary of records of Dr. Rajjoub. However, the firm found that there was no summary by respondent in the file or on the computer records, and that the records were only four pages in length. The firm returned the entire amount billed of $171 to the client.

(b) On March 15, 2001, respondent submitted a bill for 2.4 hours amounting to $228 for a summary of records of Dr. John. However, the firm found no summary by respondent in the file or on the computer records, and that the records were only 20 pages in length. Respondent did not perform the services for which he billed the client. The firm returned the entire amount billed of $228 to the client.

(c) On March 19, 2001, respondent submitted a bill for 1.9 hours amounting to $180.50 for a summary of records of Dr. Pagana. However, the firm found no summary by respondent in the file or on the computer records, and returned the entire amount billed of $180.50 to the client. Respondent billed for a summary which he failed to prepare.

(d) On September 19, 2001, respondent submitted a bill for 4.2 hours for attendance at a hearing in Bloomsburg. Respondent also billed the firm for travel expenses of $60.38 for this hearing.

(e) On September 25, 2001, respondent sent a letter to Jennifer C. Wallach, claims representative, stating:

"Enclosed please find the notice of hearing cancellation indicating that the hearing that was originally scheduled for September 19, 2001, has been cancelled due to our attempt at settlement. As you may recall, I contacted you after returning from Bloomsburg and advised you that the parties advised Judge Rapkin that no hearing would need to be held, but that we would request that a future hearing be set to possibly continue or resolve this matter."

(f) Upon review of the file, the firm found a letter from claimant's counsel, Bart E. Ecker, dated September 18, 2001, to Judge Rapkin stating:

"Please be advised that I am requesting a continuance of the hearing scheduled in the above matter for September 19, 2001, at 12:30 p.m. in Bloomsburg, Pennsylvania. This request is based upon settlement of this case by compromise and release agreement. Michael K. Hollinger, Esquire, defense counsel, consents to this continuance."

(g) The alleged hearing on September 19, 2001, never took place, and respondent was not in Bloomsburg on that day. Respondent did not perform the services for which he billed the client. The firm returned the entire amount billed of $399 to the client.

(8) Respondent represented the employer in the matter of *Jerry Cobb v. Wagman Metal Products.*

(a) On March 27, 2001, respondent submitted billings of 3.8 hours in the amount of $361 for summary of insurance company file.

(b) The firm reviewed the file and found that the records were one and a half inch thick and that the claimed time was not a reasonable expenditure of time for reviewing such a quantity of records. The firm reduced the bill down to 1.5 hours and sent the client a refund for 2.3 hours in the amount of $218.50. Respondent did summarize the insurance company file, but billed for more time than he spent doing the work.

(c) On September 6, 2001, respondent submitted a bill for 3.2 hours in the amount of $304 for a hearing in York. Respondent did attend the hearing on September 6, 2001, but overstated the time required.

(d) On September 10, 2001, respondent sent a letter to Jodie Cleveland, claims representative, stating:

"Please be advised that I attended the hearing in the above referenced matter on September 6, 2001, in York, Pennsylvania. Please be advised that this hearing was delayed nearly 45 minutes due to the judge's schedule."

(e) The firm determined that the hearing which was scheduled for 11 a.m. was held from 11:16 a.m. to 11:20 a.m. Respondent did attend the hearing but overstated the time. The firm reduced the bill to 2.0 hours and refunded the amount of $114 to the client.

(f) On October 11, 2001, respondent submitted a bill for 4.2 hours in the amount of $399 for attendance at a

hearing in York. Respondent attended the hearing but overstated the time spent in representation in his correspondence and billing to the client.

(g) On October 17, 2001, respondent sent a letter to Jodie Cleveland, claims representative, in which he stated:

"Please be advised that I attended the hearing to approve the compromise and release agreement on October 11, 2001. Please be advised that Judge Hetrick indicated that he would issue a decision on the following day, October 12, 2001, approving said agreement. After a rather lengthy delay due to the judge's schedule, the parties entered the hearing room nearly one hour after the scheduled start time."

(h) The firm determined that the transcript for this hearing was only 16 pages in length and that there was no lengthy delay and that the time stated was excessive. The firm reduced the bill to 3.0 hours and sent the client a refund for 1.2 hours in the amount of $114.

(9) Respondent represented the employer in the matter of *Melissa Cline v. Decorator Industries.*

(a) On April 17, 2001, respondent submitted billings for 5.3 hours for attendance at an April 17, 2001 hearing in Bloomsburg. Respondent also billed 0.1 hours for a report to the company regarding the hearing together with travel reimbursement of $60.03.

(b) On April 17, 2001, respondent sent a fax to Tracy Faller, claims representative, stating:

"Please allow this to confirm our conversation yesterday concerning the Melissa Cline matter in which we

discussed that a notice of postponement was received at the last minute (the judge's office mailed it on Thursday) but efforts were made to see the WCJ earlier in the day in order to have the C & R taken care of. As I stated in your voice mail, the secretary advised us to come to the hearing at 10 a.m. Around 10:30 a.m., Judge Rapkin came out of the hearing room and left the building. We assumed he was taking an a.m. break.

"About 10:45 a.m. his secretary came out and advised us (and the four other attorneys waiting for him) that he would not be back the rest of the day. Rather than continue to bill this file, I have asked claimant's counsel to check with the WCJ to see if we can get in earlier. If not, then we will get this finalized on May 23."

(c) In December 2001 when the firm audited its files, they discovered that the hearing scheduled for April 17, 2001, had been postponed by the judge from a notice that was received by the firm on April 16, 2001. Both respondent's billing and the fax to Tracy Faller were false. The firm returned the entire amount of $513 billed to the client.

(d) On May 23, 2001, respondent submitted a bill for 5.3 hours amounting to $503.50 for attendance at a hearing in Bloomsburg. Respondent also billed the firm for travel reimbursement for $60.03 for this hearing. The firm determined that this hearing never took place, as a notice of postponement had been received at the firm on May 22, 2001 from the claimant's counsel because the claimant's plane had been delayed from Tennessee. The firm returned the entire amount billed of $503.50 to the client.

(10) Respondent represented the employer in the matter of *Dianna Schneider v. Borders Books and Music.*

(a) On May 2, 2001, respondent submitted a bill of 2.6 hours in the amount of $247 for attendance at a hearing in Harrisburg.

(b) On May 4, 2001, respondent sent a letter to Tara Dibilio, claims representative, in which he stated:

"After a rather lengthy delay due to Judge Clark's schedule, the parties proceeded into the hearing room, whereupon claimant's attorney spent approximately 10 minutes inquiring of his client . . . 'On cross-examination, I cleared up some administrative matters with the claimant . . .'."

(c) The firm determined from the transcript for the hearing that there was not a lengthy delay, as the hearing was scheduled for 2:20 p.m. and it began at 2:43 p.m. The transcript also showed that the hearing only lasted nine minutes. The firm reduced the amount of respondent's bill to the client down to 1.5 hours from the 2.6 hours billed by respondent and returned the amount of $104.50 to the client. Respondent attended the hearing on May 2, 2001, but overstated the time spent in representation in his correspondence and billing to the client.

(11) Respondent represented the employer in the matter of *John Borkenhaven v. John W. Gleim Jr. Inc.*

(a) On May 21, 2001, respondent submitted a bill of 2.3 hours in the amount of $218.50 for attendance at a hearing in Harrisburg.

(b) On May 25, 2001, respondent sent a letter to Michele L. Pohl, claims representative, in which he

stated, "The hearing, which was delayed nearly one hour due to the typical delay at the judge's office . . . ."

(c) The firm determined from the transcript for this hearing that there was not an hour delay, as the hearing was scheduled for 9:45 a.m. and it began at 10:15 a.m. The transcript showed that the hearing lasted for eight minutes. The firm reduced the amount of the bill to the client down to 1.6 hours from the 2.3 hours billed by respondent and returned the amount of $66.50 to the client. Respondent attended the hearing but misrepresented in correspondence and billing the amount of time required for representation.

(12) Respondent represented the employer in the matter of *Alison Sunderland v. Electronic Data Systems.*

(a) On June 19, 2001, respondent submitted billing for 1.3 hours amounting to $123.50 for attendance at a June 19, 2001 hearing in Harrisburg.

(b) On June 26, 2001, respondent sent a letter to Theresa Link, claims representative, stating:

"Please be advised that I attended the hearing with regard to the above-referenced matter in Harrisburg, Pennsylvania. At the hearing, which was delayed nearly 30 minutes due to the judge's schedule, claimant's counsel indicated that he was satisfied that all payments had been made and would, therefore, be withdrawing the petitions. I anticipate that the workers' compensation judge will issue a decision shortly, officially withdrawing the petition."

(c) In December 2001, when the law firm audited its files relative to respondent, they discovered a letter dated

June 18, 2001, from Attorney Thomas S. Cook, on behalf of the claimant, to Judge Karl H. Peckman that was sent by fax on that date to the judge with copies to respondent and the claimant in which he stated, "We respectfully request that the claim/reinstatement petitions in the above-referenced matter be marked as withdrawn. It is our understanding that the hearing scheduled for June 19, 2001, at 11:30 a.m. will be cancelled."

(d) No hearing took place on June 19, 2001, and the billing of that date and the representations in respondent's letter of June 26, 2001, were false.

(13) Respondent represented the employer in the matter of *Mark Hollingshead v. Genlyte.*

(a) On August 15, 2001, respondent submitted billings for 3.2 hours amounting to $304 for attendance at an August 15, 2001 hearing in Chambersburg. Respondent also billed 0.2 hours amounting to $19 for correspondence to the carrier regarding the hearing. Respondent also billed the firm for travel reimbursement in the amount of $37.95 for going to the hearing.

(b) On August 21, 2001, respondent sent a letter to Linera Burke, claims representative, stating:

"Please be advised that I attended the initial hearing in the above-referenced matter on August 15, 2001, in Chambersburg, Pennsylvania. Unfortunately, despite attempts to resolve this matter prior to the hearing, claimant's counsel was somewhat reluctant to return my phone calls and accept our NCP and supplemental agreements in full resolution of this case. Regardless, the parties entered the hearing room after a brief delay and discussed the instant matter at hand. Apparently, claimant's

counsel was still confused as to the exact nature of the injury and, upon being provided with additional records on my behalf, claimant's counsel was able to verify before the judge that our description of injury (amended) was correct in the nature of a right elbow strain and a left shoulder strain. With regard to the supplemental agreements, claimant's counsel indicated that he would have his client sign the supplemental agreements, and that once they are received, he would request that the instant petition be withdrawn. At this time, I anticipate that we will be in receipt of the supplemental agreements, whereupon a decision will be issued by the judge indicating that the matter has been withdrawn. Once I receive these documents, I will contact you to further discuss this matter . . . ."

(c) In December 2001, the law firm discovered a letter dated August 14, 2001, from Attorney Thomas A. Wilken, on behalf of the claimant, to Judge James P. Deeley that stated:

"Please be advised that counsel have resolved this matter by means of a supplemental agreement. We have corrected this supplemental agreement to indicate that the claimant's right elbow and left shoulder are properly listed on the identification of injury section of the supplemental. I have spoken with the claimant and he is in agreement with signing the supplemental agreements. I anticipate receiving the agreements within the next two weeks. I ask that the August 15, 2001 hearing be postponed and listed for a 30-day status hearing. Defense counsel, Mike Hollinger, is in agreement with the same."

(d) No hearing took place on August 15, 2001.

(14) Respondent represented the employer in the matter of *Duane Plever v. Seifert Limited.* On August 29, 2001, respondent submitted billings of 1.2 hours for the summary of records of claimant's counsel. The firm determined that a review of the file revealed no summary by respondent. The firm sent the client a refund of the entire amount billed of $114 respondent billed for a summary that he did not prepare.

(15) Respondent represented the employer in the matter of *Shirley Wert v. Altrista Corporation.*

(a) On October 10, 2001, respondent submitted to the firm's billing department a bill for 5.0 hours for attendance at a hearing in Lewistown and a report to the company. Respondent also billed the firm for travel expenses in the amount of $39.33 for attending this hearing.

(b) On October 17, 2001, respondent sent a letter to Sandy Hill, claims representative, stating:

"Please be advised that I attended the hearing on October 10, 2001, in Lewistown, Pennsylvania, with regard to the above-referenced matter. As you may recall, the claimant contacted me the day before the hearing and advised that she terminated the attorney-client relationship with Attorney Thomas Torquato. Despite that, the claimant indicated that she wanted to attend the hearing to advise the judge of the same. Despite the scheduling of the hearing early in the afternoon on the 10th, Judge Mullen requested that we possibly move the hearing up to earlier in the day to accommodate her schedule. Once we arrived at the hearing, Judge Mullen's schedule was extremely overloaded, and we did not enter the hearing room until nearly 10:30 a.m. She originally requested

that we be there at 9 a.m. Regardless, Judge Mullen heard from the claimant with regard to some of the injury complaints and, more importantly, discussed the attorney situation. Specifically, the claimant indicated that a difference of opinion was occurring between her and her attorney, and she wanted the opportunity to seek additional counsel. Operating off this fact, the claimant then went into a 10-minute discussion about her injury, to which Judge Mullen advised her that it would be best if she left some things unsaid until she had the opportunity to seek the advice of counsel. Therefore, after nearly a 15- to 20-minute hearing, the judge indicated that she would reschedule a first hearing for a later date, whereupon she was giving the claimant an opportunity to seek the advice of additional counsel. The claimant indicated on the record that she would have her attorney contact me and Judge Mullen once they have entered into an attorney/client relationship."

(c) No hearing in this case took place on October 10, 2001. The improper billings by respondent appeared on a draft invoice and were identified and removed by the firm before the final invoice was sent to the client. Respondent's letter of October 17, 2001, contained misrepresentations concerning legal activity on the file.

(16) Respondent represented the employer in the matter of *Joseph Razzano v. PA Pubs.*

(a) On October 16, 2001, respondent submitted billings of 2.4 hours for receipt, review and summarization of medical records of Dr. Ponnanbalam. The firm determined that a review of the file revealed no summary by respondent of the doctor's records.

(b) The firm also determined that respondent had given this case to someone else in the law firm to handle as of September 27, 2001, which was prior to this billing. The firm sent the client a refund of the entire amount billed of $228.

(17) Respondent represented the employer in the matter of *Douglas Pasarro v. The Stanley Works.*

(a) On October 25, 2001, respondent sent a letter to Donna Frey, case manager, stating, "Please be advised that I attended the hearing with regard to the above-referenced matter on October 22, 2001 ...," and providing an extensive description of events at the hearing.

(b) On October 26, 2001, respondent submitted a bill for 1.4 hours for preparation of motion to allow rebuttal in the amount of $147.

(c) No hearing took place on October 22, 2001, and there was no testimony as indicated in respondent's October 25, 2001 letter. The improper billing appeared on a draft invoice, and the firm removed the charges prior to final billing. The firm determined that the billing by respondent on October 26, 2001, was improper and returned the entire amount billed of $147 to the client. Respondent prepared correspondence to the adjuster which discussed a hearing on October 22, 2001, which did not take place. Respondent did travel to Allentown on October 22, 2001, where he spoke informally, and at length, with claimant's attorney, Michael Usher. Respondent's misrepresentations in the October 25, 2001 letter were based on conversations he had with claimant's counsel and claimant before and after the scheduled hearing time. The improper billing was discovered by the firm and not

sent to the client, with assistance and cooperation of respondent.

(18) Respondent represented the employer in the matter of *James Yeager v. The Stanley Works.*

(a) On October 31, 2001, respondent submitted a bill to the firm for travel expenses in the amount of $64.17 for attendance at a hearing in Allentown relating to this case.

(b) On November 1, 2001, respondent sent a letter to Donna Frey, case manager, in which he stated, "Please be advised that I attended the hearing to approve the compromise and release agreement on October 31, 2001."

(c) No hearing took place on October 31, 2001, as reported by respondent. The firm discovered that a hearing had taken place the day before, on October 30, 2001, on the same date as a hearing in the case involving Douglas Pasarro. The firm discovered this on the draft invoice and the bill did not go to the client, at least in part due to respondent's cooperation with the firm.

*Cincinnati Insurance Companies*

(19) Respondent represented the employer in the matter of *Deborah South v. Blockhouse Company.*

(a) On February 2, 2001, respondent submitted billings of 1.8 hours for the review and summarization of medical records. The firm determined that a review of the file revealed no summary by respondent and records that consisted of only seven pages. The firm sent the client a refund of the entire amount billed of $189 by letter dated January 16, 2002.

(b) Respondent reviewed the medical records found in the file but failed to prepare a summary for which he billed, and he billed for more time than he spent reviewing the records.

### School Claims Services, L.L.C.

(20) Respondent represented the employer in the matter of *Linda M. Hoover v. Midd West School District.*

(a) On March 23, 2001, respondent submitted billings of 1.8 hours for the review and summarization of medical records of Dr. Krishnan. The firm determined that a review of the file revealed no summary by respondent and records that consisted of only one page. The firm sent the client a refund of the entire amount billed of $189 by letter dated January 16, 2002.

(b) Respondent reviewed the medical records found in the file, but billed for a summary he did not prepare, and billed for time in excess of that spent reviewing the medical records.

### Circuit City Stores

(21) Respondent represented the employer in the matter of *Christopher Rivera v. Circuit City Stores.*

(a) On March 6, 2001, respondent submitted billings of 3.2 hours for the review of the insurance company file. The firm determined that a review of the file revealed that the file was less than 50 pages. The firm reduced the bill down to 1.5 hours and sent the client a refund of $178.50.

(b) Respondent reviewed the insurance company file, but submitted a bill for more time than he spent reviewing the file.

*Presque Isle Insurance Company*

(22) Respondent represented the employer in the matter of *Michael Stambaugh v. Woodmasters Company.*

(a) On August 30, 2001, respondent sent a letter to Lisa Johnson, claims representative, stating:

"Please be advised that I attended the hearing in the above matter on August 29, 2001, in York, PA. Prior to the hearing, I did not receive any confirmation that claimant had agreed to sign the appropriate documents. As such, I went to the hearing to ensure the proper suspension. After a rather lengthy delay (today was Judge Tarentelli's status day where a ton of hearings were scheduled at the same time), Judge Tarentelli inquired as to whether the claimant would show up. I indicated that he was not present but that I was under the impression that the reason he was not here was because he was probably working. She asked that we wait an additional 15 minutes and further asked me to try to verify that he was at work. Obviously, I called the employer and verified that he was there. When she was finally ready for our case, I advised her of the facts and that claimant was at work. As a result, she indicated she would grant our petition. She further indicated that our petition was well-founded because the notice of suspension (which was in the file) was late and, therefore, not official. Anyway, I will await the official decision from Judge Tarentelli, whereupon I will close this file."

(b) When the firm looked into this case, they determined that the hearing that was scheduled in the case was not delayed as respondent had reported to the client. It was scheduled for 9:30 a.m. on August 29, 2001 and the transcript of the hearing showed that it started at 9:35 a.m. and ended one minute later. The firm reduced the client's bill from 3.6 hours that respondent had billed to 1.7 hours. The refund to the client was in the amount of $199.50.

### Kemper Insurance Company

(23) Respondent represented the employer in the matter of *Owen Owens v. Acme Markets.*

(a) On March 21, 2001, respondent submitted billing of 1.8 hours for summary of records of Dr. Haas. The firm found no summary by respondent either in the file or on their computer records. The firm returned the entire amount of $153 for the time billed by respondent. Respondent reviewed the medical records, which were found in the file, but failed to prepare a summary.

(b) On June 13, 2001, respondent sent a letter to Tiffany Holland, claims representative stating:

"Please be advised that I attended the hearing with regard to the above-referenced matter on June 6, 2001. Prior to the hearing, the current petition to review benefits was amended to a petition to seek approval of a compromise and release agreement. I am pleased to report that, after the hearing, Judge Baker approved the agreement, as evidenced by the attached interim order. After a nearly 45-minute delay due to the judge's schedule, the parties entered the hearing room . . . . At that

point, Judge Baker engaged in a somewhat lengthy discussion with claimant to ensure that he understood the full legal significance and the entire legal ramifications stemming from the claimant's signing of this agreement. One of the questions that Judge Baker asked was whether the claimant read the entire agreement. The claimant responded by saying that he read the 'relevant provisions' as outlined by his attorney. At this point, Judge Baker decided to take an additional 10 minutes to ensure that the claimant read every portion of the agreement. After the 10 minutes had passed, Judge Baker re-entered the hearing room and finalized the fact that the claimant had read the agreement and understood all of its provisions."

(c) The transcript for this hearing shows that there was no significant delay because the hearing was scheduled for 9 a.m. and started at 9:07 a.m. The hearing lasted 21 minutes. The firm reduced the bill to the client by 2.1 hours from the 4.6 hours that had been billed by respondent and returned the amount of $178.50 to the client.

### Fort James Corporation

(24) Respondent represented the employer in the matter of *James Wood v. Fort James.*

(a) On June 13, 2001, respondent submitted a billing for 4.2 hours for a 9 a.m. hearing in Chambersburg. The firm found from the transcript that the hearing lasted two minutes. The firm reduced the respondent's bill by 1.7 hours and returned the amount of $187 to the client for the time billed by respondent.

(b) Respondent did travel to Chambersburg for a hearing, but he submitted a bill for time in excess of that required for the hearing.

(25) Respondent represented the employer in the matter of *Tina Jones v. Fort James.*

(a) On August 14, 2001, respondent submitted a bill for 1.8 hours for summary of records of Redi-Care Medical Center. The firm could not find any summary by respondent in the file and returned the entire amount billed of $198 to the client.

(b) On September 10, 2001, respondent submitted a bill for 1.2 hours for summary of records. The firm could find no summary in the file and the records consisted of only four pages. The firm returned the entire amount billed of $132 to the client.

(c) On September 25, 2001, respondent submitted a bill for 1.8 hours for summary of records of Valley Anesthesia. The firm could not find any summary by respondent and determined that the records consisted of only eight pages. The firm returned the entire amount billed of $198 to the client.

(d) On October 10, 2001, respondent submitted a bill for 1.4 hours for summary of records of Valley Anesthesia. The firm could not find any summary by respondent and determined that this had previously been billed for by respondent on September 25, 2001, and returned the entire amount billed of $154 to the client.

(e) On October 22, 2001, respondent submitted a bill for 2.2 hours for receipt and review of an entire file from claimant's counsel including disability statements and a

summary of the same. The firm could not find any summary by respondent and determined that there were 14 pages of documents attached to a letter from plaintiff's counsel. The file had been given to LAM by respondent to prepare a stipulation. The firm reduced the bill to the client by 1.4 hours and returned the amount of $154 to the client.

(26) Respondent represented the employer in the matter of *Joanne Forrer v. Fort James.*

(a) On September 13, 2001, respondent submitted a bill for 1.8 hours for summary of medical bills, physical therapy records and MRI reports. The firm could not find any records of a summary by respondent and reduced the bill to the client by the entire amount billed of $198.

(b) Respondent reviewed the medical bills, physical therapy records and MRI reports, but did not prepare summaries, despite billing for preparation of a summary.

### *PMA Insurance Group*

(27) Respondent represented the employer in the matter of *David Bell v. Snyder's of Hanover Inc.*

(a) On November 6, 2001, respondent submitted a billing of 3.2 hours for attendance at a deposition in Camp Hill. The firm determined that the deposition took place from 7:11 a.m. to 7:58 a.m. The firm reduced the bill down to 2.0 hours and sent the client a refund of $126.

(b) Respondent billed for more time than the deposition required.

*Berkley MidAtlantic Group*

(28) Respondent represented the employer in the matter of *Jason O'Donnell v. Perry Pallet.*

(a) On October 17, 2001, respondent submitted a bill for 4.2 hours for attendance at an appeal board argument scheduled for 2:30 p.m.

(b) On October 25, 2001, respondent sent a letter to Ann M. Artz, claims representative, stating:

"Please be advised that I attended the oral argument at the Workers' Compensation Appeal Board in Harrisburg, Pennsylvania, with regard to the above-referenced matter. Please be advised that this hearing was delayed for an extensive period of time due to the excessive amount of hearings that were being held in all three courtrooms on this date."

(c) The oral argument in this case was not extensively delayed. The firm reduced the amount of time billed by respondent from 4.2 hours to 1.5 hours, showing a refund to the client of $283. The improper billings by respondent had only appeared on a draft invoice and had been identified and removed by the firm before the final invoice had been sent to the client.

(d) Respondent attended the appeal board argument, but misrepresented an extensive delay and submitted an inflated bill.

*Princeton Insurance Company*

(29) Respondent represented the employer in the matter of *William Sherrill v. JPB/McClay Street Associates.*

(a) On January 23, 2001, respondent submitted a bill for 2.2 hours for attendance at a hearing scheduled for 9:05 a.m. The firm determined that the hearing lasted for six minutes. The firm reduced the client's bill from 2.2 hours to .08 hours and returned the amount of $147 to the client.

(b) Respondent attended the hearing on January 23, 2001, but over-billed for the time required.

(30) Respondent represented the employer in the matter of *Cooks v. St. Luke's Miners.'*

(a) On August 30, 2001, respondent submitted a bill for 4.2 hours for attendance at a hearing in Pottsville. Respondent also billed the firm for travel expenses in the amount of $48.30.

(b) On September 6, 2001, respondent sent a letter to Sharon Monahan, claims representative, stating, "Please be advised that I attended the hearing in the above-referenced matter on August 30, 2001. This hearing was held in Pottsville, PA and was delayed, as usual, due to the judge's schedule." Respondent also stated in this letter, "After some additional negotiations, the parties entered the hearing room and advised Judge Stapleton of our respective positions. After some additional conversation concerning the average weekly wage, Judge Stapleton indicated that we could submit a stipulation to him within the next 30 days which would be approved and the petition would be withdrawn."

(c) No hearing took place on August 30, 2002, as it was cancelled while respondent was en route to Pottsville. The law firm reduced the amount of time billed by respondent from 4.2 hours to 2.0 hours, showing a

refund to the client of $231. Respondent did travel part of the way to Pottsville before the hearing was cancelled, during which he negotiated with claimant's attorney by cell phone and reached an agreement as to a resolution of the case, which was conveyed to the judge.

(d) Respondent misrepresented to the claims representative that a hearing had occurred and submitted an inflated bill.

(31) Respondent cooperated with Farrell & Ricci by reviewing invoices to be sent to clients and signing a joint letter with his firm which was sent to the firm's clients announcing his termination.

(32) Respondent made partial restitution to Farrell & Ricci in the amount of $10,000.

(33) Respondent cooperated with Office of Disciplinary Counsel.

(34) Respondent has shown sincere remorse for his misconduct.

(35) Farrell & Ricci refunded $6,730.69 to affected clients who the firm determined had been over billed by respondent.

(36) Farrell & Ricci ultimately paid $20,000 as a negotiated settlement with Travelers Insurance for additional fee over-charges discovered by a fee audit conducted by Travelers.

(37) The firm lost lawyer productivity worth $26,350 for the efforts of its lawyers expended in its investigation of the over billing.

(38) Farrell & Ricci incurred legal fees paid to attorneys retained by the firm to provide criminal and ethical advice, which amounted to approximately $2,650.

(39) Following respondent's termination by Farrell & Ricci, he worked for the Public Defender's Office of Berks County from January 2002 until April 2004.

(40) Following respondent's termination from Farrell & Ricci, he was referred by Lawyers Concerned for Lawyers to Frederick E. Henry, a licensed clinical social worker with an emphasis on mental health.

(41) Mr. Henry found no history of psychological or psychiatric treatment prior to the meeting of December 12, 2001. Mr. Henry diagnosed respondent with an adjustment disorder with depressed mood resulting from his employment termination and the ethical violations of over-billing his clients.

(42) Mr. Henry opined that respondent was aware at the time of his misconduct that his actions were wrong.

(43) Respondent continues to see Mr. Henry every two to three weeks.

(44) Respondent met with Dr. L.A. Rotenberg, a psychiatrist, in December 2001. Dr. Rotenberg concluded that respondent suffered from an adjustment disorder, but did not find that the disorder caused the misconduct.

(45) Respondent is currently under the care of Dr. John Timko for medication and therapy.

(46) Respondent presented the testimony of five character witnesses. Of these witnesses, only two knew him prior to the time of the misconduct.

(47) Respondent presented numerous character letters attached to his answer to petition for discipline.

(48) Glenn D. Welsh, Esquire, and Kevin M. Beals, Esquire, who initially submitted character letters of support and recommendation, withdrew their respective letters.

## III. CONCLUSIONS OF LAW

By his conduct as set forth above, respondent violated the following Rules of Professional Conduct:

(1) R.P.C. 1.5(a)—A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.

(2) R.P.C. 8.4(c)—It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

## IV. DISCUSSION

This matter is before the Disciplinary Board on a petition for discipline charging respondent with professional misconduct arising out of his pattern of over billing clients. Respondent cooperated with Office of Disciplinary Counsel by stipulating to the facts of this matter and to each of the violations alleged in the petition for discipline.

From January 23, 2001 to November 6, 2001, respondent engaged in a pattern of conduct which included billing clients for work he had either not actually performed, or significantly exaggerating the amount of time spent for services actually performed. Respondent sent corre-

spondence to clients that misrepresented the services performed, such as stating that he had attended hearings on matters which he had not attended. This conduct involved representation of 10 different clients, who were either insurance companies or self-insured employers, in the defense of 24 separate workers' compensation matters. The record is clear that the clients paid the fraudulent invoices. After November 2001 through December 10, 2001, respondent entered false time on his daily time sheet for services he did not perform for clients, but these time entries were never incorporated into any invoices sent to clients since they were discovered by the law firm prior to the billing cycle.

Respondent's misconduct came to light upon discovery by his former law firm. Financial losses emanating from respondent's misconduct collectively cost his former firm approximately $55,000 in refunds, in lost lawyer productivity during the investigation and ensuing fee audit by a major client, and in legal fees paid to outside counsel.

Respondent has shown sincere remorse for his misconduct. He cooperated with Office of Disciplinary Counsel's investigation and stipulated to each of the violations alleged in the petition for discipline. Respondent made partial restitution to his former law firm of $10,000.

Respondent testified to various factors that contributed to his misconduct. Respondent believed there was a strong expectation from the law firm that each attorney would bill 195 to 200 hours per month, although Joseph Ricci, the law firm's principal, explained that those numbers were merely an ideal goal. Respondent had billed

the second largest number of hours in the firm and had received salary increases and bonuses consistent with his achievements at the firm. Another factor was respondent's need to impress his then-fiancée and her family with his financial ability to support her. A third factor was that respondent owed more than $100,000 in undergraduate and law school loans.

After respondent's termination from the law firm, he was referred by Lawyers Concerned for Lawyers to Frederick Henry, a licensed clinical social worker with an emphasis on mental health. Mr. Henry described respondent as extremely depressed and distraught. From the very first contact, respondent expressed remorse to Mr. Henry for his unethical actions and the reasoning that led to these actions. However, Mr. Henry indicated that respondent did not reveal to him that he made misrepresentations to clients concerning the status of their cases. Mr. Henry diagnosed respondent with an adjustment disorder, which was caused by respondent's employment termination. Mr. Henry continues to counsel respondent.

Respondent also met with Dr. L.A. Rotenberg, a psychiatrist. Dr. Rotenberg conducted an interview of respondent shortly after respondent's termination. Dr. Rotenberg concluded that respondent suffered from an adjustment disorder, but he did not conclude that this disorder was a cause of the misconduct. Evaluation of this evidence persuades the board that respondent did not prove by clear and convincing evidence that he suffered from a psychiatric disorder which substantially caused the misconduct. *Office of Disciplinary Counsel v. Braun,* 520 Pa. 157, 553 A.2d 894 (1989).

Respondent presented extensive character evidence, both through live witnesses and by letters, all of which was very positive and laudatory regarding his reputation for truthfulness. However, some of the witnesses did not know respondent at the time of the misconduct, having met him after the fact, and did not know all of the pertinent details of the misconduct.

The record presents a picture of a young attorney at his first law firm job, under tremendous stress to meet professional and personal goals. Unfortunately, the method chosen by respondent to meet these goals involved dishonesty and deceit, in every way contrary to the code of ethics governing the legal profession. It is clear from the record that respondent was aware at the time that his actions were wrong. Respondent has paid for these actions, having lost his employment and his fiancée, and enduring emotional distress. While the background of respondent's life at the time of the misconduct may help the board to understand his situation, it in no way provides a defense to his dishonest behavior.

This case involves fraudulent fee billings and repeated misrepresentations by respondent regarding his clients' cases. Prior cases involving similar misconduct have resulted in a range of sanctions, depending on the unique circumstances of each case. Three recent matters have involved inflated fees: *In re Anonymous No. 149 D.B. 1995,* 380 Disciplinary Docket no. 3 (Pa. Dec. 30, 1997) (respondent improperly billed $18,338 in fees and $9,164 in travel expenses, made partial restitution, provided *Braun* mitigation, and was suspended for one year and one day); *In re Anonymous No. 82 D.B. 1999,* 637 Disciplinary Docket no. 3 (Pa. Dec. 28, 2000) (respondent

improperly billed between $30,000 and $40,000, made no restitution, and was suspended for three years); and *Office of Disciplinary Counsel v. Rovner,* 157 D.B. 2000, 822 Disciplinary Docket no. 3 (Pa. May 6, 2003) (respondent improperly billed $53,509; however, respondent intentionally did not send the bills to the clients, and he was suspended for six months).

Review of the totality of the facts and circumstances of this matter, as well as consideration of the above cases, persuades the board that a suspension of one year and one day is appropriate, retroactive to July 20, 2004, the date of respondent's voluntary assumption of inactive status. This sanction accounts for the seriousness of respondent's misconduct, and requires that he petition for reinstatement and prove his fitness and character if he desires to practice law in the future.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, Michael K. Hollinger, be suspended from the practice of law for a period of one year and one day retroactive to July 20, 2004.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Vice-Chair Rudnitsky and Members Raspanti, Suh, Pietragallo and O'Connor dissented for a one-year suspension.

Board Members Gentile and Nordenberg dissented for a suspension of less than one year.

## ORDER

And now, June 16, 2005, upon consideration of the report and recommendations of the Disciplinary Board dated March 21, 2005, it is hereby ordered that Michael Keith Hollinger be and he is suspended from the bar of this Commonwealth for a period of one year and one day retroactive to July 20, 2004.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.